Filed 8/25/21  Estate of Barnick CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| Estate of WILLIAM BARNICK, Deceased. | |
| JUNE BARNICK, | D078412 |
| Petitioner and Appellant, | (Super. Ct. No. 37-2018-0007634-PR-LA-CTL) |
| v. | |
| BRANDON BARNICK, | |
| Objector and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Julia Craig Kelety, Judge.  Affirmed.

Allard Smith and Mara Allard for Petitioner and Appellant.

Hughes & Pizzuto, Shannon N. Montisano; Henderson, Caverly, Pum & Trytten and Kristen E. Caverly for Objector and Respondent.

I.

INTRODUCTION

In February 2020, June Barnick (June) filed a petition in the probate court pertaining to the estate of William Barnick (William), June's former husband, who died intestate in 2018. In the petition, June sought an order confirming her interest in four items of personal property, based on a 2011 marital dissolution judgment (the 2011 Dissolution Judgment) entered against William. June claimed that the property in question was in the possession of the personal representative of William's estate: (1) rental income derived from certain real properties owned by William and June during the marriage; (2) tax refunds for two years prior to the dissolution; (3) a retirement account[1]; and (4) stock in a company called Petrosonics. June requested that the court instruct the personal representative to transfer the properties to her.

Brandon Barnick (Brandon), June and William's son and William's heir, filed a demurrer to June's petition. In a supporting brief, Brandon contended that June's petition was time barred because June failed to timely file a creditor's claim asserting her interest in these assets pursuant to Probate Code section 9100, subdivision (a), as required.[2] June did not oppose the demurrer.

The probate court sustained Brandon's demurrer without leave to amend. The probate court reasoned that June's claims to the rental income and tax refunds were barred because June had failed to timely file a

_____

[1] The retirement account is occasionally referred to in the record as a "401k account."

[2] Unless otherwise specified, all subsequent statutory references are to the Probate Code.

2

creditor's claim. The court further concluded that June could not properly bring a claim as to the retirement account or the Petrosonics stock because neither asset was part of the estate.

On appeal, June contends that the probate court erred in concluding that her claim to the rental income and tax refunds are time barred. June asserts that her petition as to these assets "presents a title claim," that is not subject to the time limits for filing a creditor's claim. June further contends that the probate court's failure to enforce portions of the dissolution judgment with respect to her claim for rental income and the retirement account violated Family Code section 2337, subdivision (g).[3] Finally, June presents an argument on the merits with respect to her claim to $34,177.68 in unpaid tax refunds. We affirm the order sustaining Brandon's demurrer to June's petition without leave to amend.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The 2011 Dissolution Judgment*

In June 2011, the family court entered the 2011 Dissolution Judgment.

The 2011 Dissolution Judgment ordered that the parties' property be divided in relevant part as follows.[4] First, the court characterized three

---

[3] June does not bring any claim on appeal pertaining to the Petrosonics stock.

[4] As noted in part I, *ante*, June's petition pertains to four items of personal property: (1) rental income derived from certain real properties owned by William and June during the marriage; (2) tax refunds for two years prior to the dissolution; (3) a retirement or 401k account; and (4) stock in a company called Petrosonics. Accordingly, we outline the provisions of the 2011 Dissolution Judgment related to these assets in the text.

3

parcels of real property as community property, and ordered those properties divided as follows:

> "[T]he parties are each awarded 50/50 . . . [of] the equitable value of the properties. For purposes of division the Court will allow the parties to appear by noticed motion to address their proposed plan for division. The Court orders that in advance a final appraisal be provided by a licensed appraiser (chosen by [June]) costs to be shared by the parties 50/50. If [June] advances the money she will be reimbursed [one half] from [William's] equitable interests. [William] is ordered to fully cooperate in showing the property and providing all necessary documents requested for such appraisal. [William] is also ordered to provide to [June] a complete set of keys for each property. The parties are ordered to appear by noticed hearing to finalize any agreement reached in the 50/50 division of these assets."

With respect to the tax refunds, the court determined:

> "[June] is entitled to [one half] of the following refunds [*sic*] amounts; for 2004 ($1750) and for 2005, Fed[eral] ($42,545.00) and of the State refund ($24,060.35) [*sic*]. [William] will be ordered to pay this amount from his share of the equity of the [three] real properties."

As to the retirement account, the court ordered:

> "a 50/50 division of [William's] 401k account with Fidelity. In the event this account has been liquidated as represented by [June], [William] is ordered to provide all documentation detailing the tracing of the 401k funds (rollover value of approximately $365,586.06) to LPL account# . . . and any subsequent reinvestment of these funds thereafter. [William] is ordered to immediately provide these tracing documents and upon written request of [June] he is to transfer to her 50% interest and title in all remaining funds, shares, negotiable instruments that were invested or reinvested from the original source 401k account. The Court reserves jurisdiction to consider possible [automatic temporary restraining order] violations for this particular account."

4

The court stated the following with respect to the Petrosonics stock:

> "[William] was ordered to produce all necessary contact information and documentation to confirm that the Petrosonics stock previously purchased for $80,000, which is a [community property] asset, is now worthless. This was to be examined by the Special Master[5] along with recommendations on how to address the tax write off. The Court orders that the stock is divided 50/50. Each party may thereafter seek a tax write-off as they see fit."

The 2011 Dissolution Judgment also specified:

> "The court reaffirms its intention to reserve jurisdiction over any equalization payments listed above, the final determination of any [automatic temporary restraining order] violations, and the division of the equity in the [three] real properties."

B. *William's death and the appointment of a personal representative of William's estate*

William died in January 2018. In May 2018, the probate court appointed Nancy Thornton as the personal representative of William's estate.

---

5    The 2011 Dissolution Judgment indicated that a special master had been appointed in connection with the dissolution proceedings, but that "both of the parties . . . failed to cooperate" with the special master. The judgment further stated that the special master had been "unable to complete his assignment," and that the court had granted the special master's request to be relieved.

C. *Proceedings in family court after William's death*

After William's death and Thornton's appointment, the family court permitted Thornton to substitute into the dissolution proceedings as a party for purposes of resolving the remaining property issues.[6]

In February 2019, the family court entered further orders pertaining to the three real properties that the court awarded William and June equal shares of in the 2011 Dissolution Judgment. The court awarded one of the properties to June and one to William's estate. The court ordered the third property (the Sunrise Canyon Property) to be sold and the proceeds to be "divided equally between the parties" after the payment of fees, commissions and a lien entered on a judgment in favor of the special master who had been appointed in the dissolution case.

In August 2019, the family court entered an order that further specified how the proceeds of the sale of the Sunrise Canyon Property would be divided. The August 2019 order specified that June would be paid from the proceeds of the sale, an additional "$34,177.68 for one-half of the income tax refunds for years 2004 and 2005, as identified in the Dissolution Judgment entered June 7, 2011."

The August 2019 order further specified:

> "Except for division of the Sunrise Canyon sale proceeds, any party desiring further relief from this Court, including an award of attorneys' fees and costs, damages for [automatic temporary restraining order] violations, or any other issues reserved in [the 2011 Dissolution Judgment],

---

[6] According to Brandon's respondent's brief, "In the nearly seven years after the 2011 Judgment and before [William's] death, neither [William] nor [June] took any action with respect to the delineated property rights in [the] 2011 Judgment." This appeal demonstrates some of the problems that may arise if one delays the enforcement of one's rights stemming from a marital dissolution judgment.

6

shall file a Request for Order no later than September 30, 2019. Any claims not raised by a Request for Order on or before September 30, 2019, shall be deemed waived.

" . . . Subject to any Request for Order filed on or before September 30, 2019 and Court division of the proceeds of sale of Sunrise Canyon, all claims and reserved issues in which the Court retained jurisdiction in [the 2011 Dissolution Judgment], are deemed resolved and adjudicated or waived."

In December 2019, the family court entered a final division of the proceeds of the sale of the Sunrise Canyon Property, ordering $117,188.78 to be paid to William's estate and $137,026.88 to June.[7]

In the December 2019 order, the family court also overruled June's objection that the family court's August 2019 order improperly terminated an "unpaid money judgment."[8] The family court stated:

"As set forth in [the 2011 Dissolution Judgment], the court characterized the three properties at issue as community property and ordered 'each awarded 50/50 as to the equitable value of the properties.' 'For purposes of division the Court will allow the parties to appear by noticed motion to address their proposed plan for division.' The court 'reserv[ed] jurisdiction over any equalization payments, the final determination of any [automatic temporary restraining order] violations, and the division of the equity

---

[7] In the December 2019 order, the family court also found that June's "conduct frustrated settlement and unnecessarily increased litigation costs through her lack of cooperation throughout these proceedings." The family court imposed sanctions against June in the amount of $45,000 for this conduct, which it deducted from June's share of the Sunrise Canyon Property sale proceeds.

[8] The family court stated that June had raised this objection in a December 6, 2019 supplemental memorandum of points and authorities. June's December 6, 2019 supplemental memorandum is not in the record.

7

in the [three] real properties.'  By its August 29, 2019 orders, the court enforced the terms of the judgment consistent with the judgment.  The court awarded a 50/50 equitable value of the properties and provided for equalization of expenses and reimbursements timely raised with the court, including any rents on the properties.

"The termination of jurisdiction to hear any award of attorney's fees and costs or [automatic temporary restraining order] violations in connection with [the 2011 Dissolution Judgment] is not a termination of 'unpaid money judgments.'  The court is well within its authority and discretion to bring finality to matters over which it reserved jurisdiction in a judgment entered 18 years ago.[9]  Indeed, [the 2011 Dissolution Judgment] provided June with 180 days after service of the final judgment to bring her claims for certain [automatic temporary restraining order] violations.

"The court's August 29, 2019 orders did not, as June concedes, extinguish her community interest and right to a 50/50 division of the 'Petrosonics' stock (which was suggested 'worthless' at the time of trial) and William's 401k account with Fidelity provided for in the [2011 Dissolution Judgment].  June is free to bring any noticed motion to enforce those terms and obtain her 50/50 division of the assets.  The court is not required to include these terms in any equalization payment ordered from the division of the three properties."

In February 2020, June filed a request for order in the family court captioned, "Enforcement of Creditor's Claims, etc."  In the request, June stated:

"[June] seeks to enforce the terms of [the 2011 Dissolution Judgment] as it relates to: [William's] 401k, Petrosonic[s]

---

9     The 2011 Dissolution Judgment was entered approximately *eight* years before the December 2019 order.

8

stock, the parties' 2004 and 2005 Fed. and State tax refunds, any all claims set forth in Ex. A[10] attached hereto (monetary figures to be supplemented and/or revised at a later date), and any and all other remaining money judgments or judgments per [Family Code section] 291.[11]"

Thornton's counsel filed a declaration opposing June's request for order that stated that the family court should deny June's request because June had failed to "provide any facts in support of her claims," and also because the request was untimely. Alternatively, Thornton's counsel stated that the family court should deny the request for order without prejudice, to permit June to "bring[ ] such claims in the probate court."

June's counsel later filed a reply declaration requesting that the family court either continue or stay the proceeding on the request for order until the related probate petition[12] was heard.

In July 2020, the family court entered an order dismissing June's request for order without prejudice. In its order, the court stated in relevant part:

"2. 9:45 Case called. [June] has not made an appearance.

"3. [The] Court notes this matter was continued at the request of [June] for legal representation and to date the Court has not received any formal substitution of attorney

10    Exhibit A consisted of a spreadsheet outlining various amounts that June claimed were owed to her, including amounts pertaining to the four assets at issue in this appeal: (1) rental income; (2) tax refunds (3) a retirement account; and (4) Petrosonics stock.

11    Family Code section 291 pertains to the enforcement of judgments made or entered under the Family Code.

12    The related probate petition refers to the petition at issue in this appeal, which we describe in part II.D.4, *post*.

9

from Attorney Burnes and there is no appearance by [June] or counsel.

"4. The Court is to proceed by default.

"5. The Court further notes the history of this case has involved [June] essentially refusing to participate in the proceedings and the Request for Order filed is deficient and not in compliance with [California] rules."

D. *Proceedings pertaining to the probate of William's estate*

1. *Thornton's notice to creditors*

On August 9, 2018, Thornton served a notice to the creditors of William's estate, including June, concerning the deadline to file a creditor's claim. The notice stated in relevant part:

"You must FILE YOUR CLAIM with the court clerk . . . AND mail or deliver a copy to the personal representative before the **last to occur** of the following dates:

a. **four months** after (*date*): May 23, 2018, the date letters (authority to act for the estate) were first issued to a general personal representative . . . **OR**

b. **60 days** after (*date*): August 9, 2018, the date this notice was mailed or personally served to you."

2. *June's filing of a creditor's claim*

June filed a creditor's claim with Thornton on January 8, 2019, seeking a total of $1,591,952.36. In a document titled, "Facts supporting creditor claim," June indicated that her claim was a "result of the dissolution of marriage," pending between William and June. June further stated that, "Final judgment was not entered in the divorce prior to the death of

William . . . ."  In an accompanying spreadsheet,[13] June indicated that she was entitled, as relevant to this appeal, to the following:

$633,600 in unpaid rental income;

$68,359 in tax refunds;

$182,753 from the retirement account; and

$40,000 in Petrosonics stock.[14]

3.  *Thornton's rejection of June's claim*

In November 2019, Thornton rejected June's claim.

4.  *June's petition in the probate court*

In February 2020, June filed a petition setting forth two causes of action titled, "Petition to Confirm [June's] Interest in Personal Property in the Possession of Nancy F. Thornton, Administrator of the Estate of William Barnick ("Administrator"), and Instruct Administrator to Transfer Property to [June], Pursuant to [sections] 9300, 850, *et seq.*"

In the background portion of her petition, June stated that she sought to "protect [her] right to enforce" the 2011 Dissolution Judgment, which she attached to the petition.  June alleged that "William passed on January 9, 2018 having never distributed to June any of the assets she was awarded as part of the 2011 Dissolution Judgment."  June indicated that she was

---

[13]  The spreadsheet appears to be the same spreadsheet that June attached as Exhibit A to her February 2020 request for order in the family court.

[14]  June also claimed that she was entitled to postjudgment interest on the tax refunds and retirement account amounts (as well as $14,186 related to a loan not at issue in this appeal) at the rate of 10 percent from the date of the 2011 Dissolution Judgment.  June claimed that she was owed $199,461.36 in interest based on $72.69 a day in interest for 2,744 days.

11

bringing the petition pursuant to sections 9300 and 850.  She summarized these provisions as follows:

> "Pursuant to [section] 9300, money judgments rendered against a decedent are not enforceable under the Code of Civil Procedure, and such judgments are payable in the ordinary course of administration.  ([§ 9300, subd. (a)].)

> ". . . Section 850[,subdivision] (a)(2)(C) also provides that any interested person may petition the court for orders where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another.  [§ 850, subd. (a)(2)(C)]."

As further background, June summarized the provisions of the 2011 Dissolution Judgment pertaining to the properties at issue and claimed that she was entitled to various sums of money based on those provisions. Specifically, June claimed that she was entitled to the following amounts:

> Rental income

> "[June] is informed and believes and thereon alleges that [William] collected approximately $275,990.00 in rental income from [two real properties] alone, even after accounting for monthly mortgage payments.  One-half of this amount belongs to [June] . . . [June] is not presently aware of the rental income [William] received from [a third property].  [June] will supplement this Petition when further information concerning the rental income received by [William] for the [third property] is discovered."

> Tax refunds

> "The Estate determined incorrectly that amounts reflected in parentheses in [the 2011 Dissolution Judgment] constituted the full amount of the 2005 refunds, and that [June] was therefore entitled to one half of the amounts in parentheses.  The Estate thereafter paid out to [June] the sum of $34,177.68, as one-half the 2004 and 2005 State and

12

Federal income tax refunds. This was clearly and blatantly made in error, and [June] is owed another payment of **$34,177.68** because the $34,177.68 reflects one-quarter of the refunds [William] received for 2005."

Retirement account

"Decedent's 401k was valued at the conclusion of trial on January 7, 2011, to be approximately $365,586.06. . . . Applying a conservative rate of return of six (6) percent per annum to $365,586.06, from January 7, 2011 until present, yields a balance of $561,174.61, of which one-half, or $280,587.30 is due to Petitioner."

Petrosonics stock

"To date, the Estate has failed to provide [June] with her vested community property interest in the Petrosonic[s] stocks, valued at the time Judgment was entered at $80,000." (Boldface omitted.)

In the first cause of action of her petition, June sought a "[c]ourt [o]rder confirming [her] interest," in the properties described in her petition, which June alleged were in Thornton's possession.

In her second cause of action, June alleged that "[she] has been awarded a money judgment and [William] died in possession of, and holding title to, real and personal property to which June is entitled." June requested that the probate court order Thornton to transfer "the amounts currently owing to June pursuant to the 2011 Dissolution Judgment forthwith."

5. *Brandon's demurrer*

In May 2020, Brandon, as William's heir, filed a demurrer to June's petition. In a brief in support of his demurrer, Brandon noted that Thornton filed a notice to creditors stating that all creditors were required to file their claims as to William's estate no later than sixty days after August 9, 2018.

13

Brandon further noted that June filed "her creditor's claim on January 8, 2019, three months after the time for filing a claim had expired." Brandon argued that Thornton had therefore properly rejected June's claim. Brandon further maintained that June's petition in the probate court was barred by the applicable limitations period. (Citing § 9002.)[15]

6. *The probate court's order sustaining Brandon's demurrer without leave to amend*

The probate court sustained the demurrer without leave to amend in August 2020.[16] The court outlined the law governing the applicable statute of limitations as follows:

> "A judgment under the Family Code is enforceable until paid in full or otherwise satisfied, and is exempt from any requirement that a judgment be renewed. ([Fam. Code,] § 291.) After the death of the judgment debtor, enforcement of a judgment against property in the judgment debtor's estate is governed by the Probate Code. ([Code of Civ. Proc.,] § 686.020.) A money judgment against a decedent is payable in the course of administration, and shall be filed in the same manner as other claims. (. . . § 9300.) However, notwithstanding the death of the decedent, a judgment for possession of property or a judgment for sale of property may be enforced under the Enforcement of Judgments Law (Section 680.010 et seq. the Code of Civil Procedure). (. . . § 9302.)

> "A creditor must file a claim before expiration of the later of the following times: (1) four months after the date letters are first issued to a general personal representative, or (2) sixty days after the date notice of administration is

---

[15]    Brandon argued in part, "Under [section] 9002, all creditor claims must be filed within the time provided by statute, and claims not filed as required are barred." We discuss section 9002 in part III.A.1.b.ii, *post*.

[16]    The probate court noted that June had not opposed the demurrer.

14

mailed or personally delivered to the creditor. (. . . § 9100[, subd.](a).) Except as otherwise provided by statute, a creditor of an estate must file a claim in the manner and within the time provided [in] the Probate Code otherwise the claim will be barred. (. . . § 9002.) The definition of claim includes a demand for payment for any of a liability of the decedent, whether arising in contract, tort, or otherwise. (. . . § 9000.)"

The probate court applied this law to each item of personal property that June sought in her petition. With respect to June's request for money from rental income, the probate court reasoned that June was "asserting that [William] wrongfully withheld rents after the properties were divided pursuant to [the 2011 Dissolution Judgment]," and that she was thus "demanding payment for a liability of [William] arising in tort, which meets the definition of a claim under . . . section 9000." The court reasoned further that June had failed to timely file a creditor's claim with Thornton demanding payment for such liability and that her claim was therefore barred. The probate court reasoned:

> "June was therefore required to follow the procedure for filing a claim under the Probate Code, otherwise this claim will be barred. [¶] Letters were issued to Thornton on May 23, 2018, and June was served with notice of administration on August 9, 2018. June therefore had until October 8, 2018 to file her claim, but she did not file it until January 8, 2019. Her claim was therefore untimely, and the demurrer is sustained on this ground."

The probate court also concluded that June's petition was untimely insofar as it sought payments for unpaid tax refunds. The probate court reasoned:

> "[The 2011 Dissolution Judgment] provides that June is 'entitled to 1/2 of the following refunds amounts; for 2004 ($1750) and for 2005, Fed ($42,545.00) and of the State

15

refund ($24,060.35).' This constitutes a money judgment, and June's claim for this portion of the judgment is barred for the reasons discussed above."

With respect to the retirement account and the Petrosonics stock, the court determined that, to the extent those assets had been liquidated, June was seeking to bring a claim against the estate that was time barred due to June's failure to timely file a creditor's claim. Alternatively, the probate court determined that June's petition failed to state a claim as to these assets because the personal representative had not marshalled either asset as part of the estate and thus, neither would be subject to a "distribution order from this court." The probate court concluded that, to the extent June sought "some portion of th[ese] asset[s] as a judgment for possession of the asset, [June] may need to pursue th[ese] asset[s] in some other tribunal or venue."

E. *The appeal*

June appeals from the probate court's order sustaining Brandon's demurrer without leave to amend.[17]

III.

DISCUSSION

A. *The probate court properly sustained Brandon's demurrer*

June claims that the probate court erred in sustaining Brandon's demurrer. Specifically, June argues that her petition was timely insofar as she sought to recover rental income and tax refunds because her petition was not a creditor's claim but rather, a "claim for possession and title," that is not

---

17 The order is appealable as an order "[adjudicating the merits of a claim made under Part 19 (commencing with Section 850) of Division 2." (Prob. Code, § 1300, subd. (k).)

16

subject to the time limitations for the claims of a creditor of an estate contained in section 9000 et seq.[18]

    1. *Governing law*

        a. *The law governing demurrers and standard of review*

"A demurrer tests the legal sufficiency of the complaint." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1608 (*Hamilton*).) The plaintiff " 'bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law' and 'must show the complaint alleges facts sufficient to establish every element of [the] cause of action.' " (*Sui v. Price* (2011) 196 Cal.App.4th 933, 938 (*Sui*).)

        b. *Substantive law*

            i. *Creditor claims under the Probate Code*

The Probate Code establishes a series of requirements for the filing of a claim as a creditor of a decedent's estate. Sections 9000 through 9004 contain a series of general provisions pertaining to such claims. Section 9000 provides in relevant part:

---

[18]   Specifically, June argues:

> "The demurrer ruling found that June's claims for her unpaid tax refund owed and her claims for unpaid rents were time barred based on the application of . . . Section 9000 [citation]. However, the claim made by June was not a money judgment claim but a claim for possession and title. Pursuant to . . . Section 9000[, subdivision] (b) ['Claim['] does not include a dispute regarding title of a decedent to specific property alleged to be included in the decedent's estate.[] The demurrer ruling references consideration of the claim filed as in the probate action which presents a title claim not a money judgment claim [citation]. The application of the time limits of . . . Section 9100 are therefore inapplicable and the demurrer ruling should be reversed and the petition [citation] set for hearing."

"As used in this division:

"(a) 'Claim' means a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated:

"(1) Liability of the decedent, whether arising in contract, tort, or otherwise.

"[¶] . . . [¶]

"[¶] . . . [¶]

"(b) 'Claim' does not include a dispute regarding title of a decedent to specific property alleged to be included in the decedent's estate."

Section 9002 provides:

"Except as otherwise provided by statute:

"(a) All claims shall be filed in the manner and within the time provided in this part.

"(b) A claim that is not filed as provided in this part is barred."

Sections 9100 through 9104 provide the time limits for filing a creditor's claim. Section 9100 provides in relevant part:

"(a) A creditor shall file a claim before expiration of the later of the following times:

"(1) Four months after the date letters are first issued to a general personal representative.

"(2) Sixty days after the date notice of administration is mailed or personally delivered to the creditor."

18

Sections 9300 through 9304 pertain to the paying of creditor's claims established by a judgment. Section 9300 provides in relevant part:

> "(a) . . . [A]fter the death of the decedent all money judgments against the decedent or against the personal representative on a claim against the decedent or estate are payable in the course of administration and are not enforceable against property in the estate of the decedent under the Enforcement of Judgments Law (Title 9 (commencing with Section 680.010) of Part 2 of the Code of Civil Procedure).
>
> "(b) . . . [A] judgment referred to in subdivision (a) shall be filed in the same manner as other claims."

Section 9302 provides that a judgment for "possession of property" or for "sale of property," may be enforced pursuant to the Enforcement of Judgments Law (Code of Civ. Proc., § 680.010.)

> "(a) Notwithstanding the death of the decedent, a judgment for possession of property or a judgment for sale of property may be enforced under the Enforcement of Judgments Law (Title 9 (commencing with Section 680.010) of Part 2 of the Code of Civil Procedure). Nothing in this subdivision authorizes enforcement under the Enforcement of Judgments Law against any property in the estate of the decedent other than the property described in the judgment for possession or sale.
>
> "(b) After the death of the decedent, a demand for money that is not satisfied from the property described in a judgment for sale of property shall be filed as a claim in the same manner as other claims and is payable in the course of administration."

### ii. *Probate Code section 850*

Probate Code section 850 outlines a series of petitions that may be brought in the probate court. Section 850, subdivision (a)(2)(C) provides in relevant part:

19

"(a) The following persons may file a petition requesting that the court make an order under this part

"(2) The personal representative or any interested person in any of the following cases:

"(C) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another."[19]

2. *Application*

June fails to establish that her petition, insofar as she sought to recover rental income and tax refunds, is a claim for "possession and title," and therefore not subject to the time limits for bringing a creditor's claim contained in section 9000 et seq.[20] On the contrary, for the reasons discussed below, the probate court properly concluded that June's petition was an untimely creditor's claim insofar as it sought to recover amounts for rental income and tax refunds.

With respect to June's claim for rental income, June's petition sought "her share of rental income received from the marital properties." However, no portion of the 2011 Dissolution Judgment awarded June rental income from the marital properties. Thus, it is clear that June's petition did not seek to enforce a provision in the 2011 Dissolution Judgment as a "judgment for

---

[19] June cited section 850, subdivision (a)(2)(C) in her petition in the probate court. However, other than stating that her appeal is appealable as an order "adjudicat[ing] the merits of June's Petition made under Probate Code section 850," June does not refer to section 850 in her briefing on appeal.

[20] June does not contend that her petition is a *timely* filed creditor's claim. June's sole argument on appeal as to timeliness is that her petition did *not* constitute a creditor's claim.

possession of property" as provided in section 9302.[21] Instead, as the probate court properly concluded, June's petition alleged that William had wrongfully withheld rental income derived from real property that William and June had been awarded equal shares of in the 2011 Dissolution Judgment. Thus, the probate court properly concluded that June's petition sought to demand payment for a liability of William, and, as such, was a creditor's claim, subject to the time limitations of section 9000 et seq. (See §§ 9000 [defining claim for purposes of the creditor's claim statute as including a "demand for payment," for the "[l]iability of the decedent"], 9100 [establishing time limits for the filing of a creditor's claim].) Because it is undisputed that June failed to comply with the time limits for filing a creditor's claim (see fn. 20, *ante*), the probate court properly concluded that June's petition was untimely insofar as she sought to recover rental income.

As to June's claim for tax refunds, June's petition sought to recover her share of "[William's] 2004 and 2005 Income Tax refunds." The 2011 Dissolution Judgment provided, "The Court finds that [June] is entitled to [one half] of the following refunds amounts; for 2004 ($1750) and for 2005, Fed[eral] ($42,545.00) and of the State refund ($24,060.35) [*sic*]. [William] will be ordered to pay this amount from his share of the equity of the [three] real properties." Because the 2011 Dissolution Judgment required the payment of money for the tax refunds, the probate court properly concluded that the 2011 Dissolution Judgment contained a money judgment as to the tax refunds. (See *In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 499 "[[Code of Civ. Proc.] section 680.270 defines a 'money judgment' as "that part

---

[21] As noted in part III.A.1.b.i, *ante*, section 9302 provides that a "judgment for possession of property . . . may be enforced" outside of the creditor's claim process through the "Enforcement of Judgments Law (Title 9 (commencing with Section 680.010) of Part 2 of the Code of Civil Procedure)."

of a judgment that requires the payment of money." The June 1993 order . . . ordered Richard to pay Carol $100,000 and $160,000, respectively. It is therefore unequivocally a money judgment."].) Because the enforcement of a money judgment against a decedent must be brought as a creditor's claim (§ 9300, subd. (a)), the probate court properly concluded that June's claim for allegedly unpaid tax refunds was untimely.[22]

In sum, the probate court properly determined that the claims in June's petition amounted to creditor's claims insofar as she sought money representing a share of rental income and tax refunds. Further, while June *asserts* that her claims for rental income and tax refunds were not creditor's claims subject to the time limitations of section 9000 et seq, June fails to present any legal argument in support of this assertion. Thus, June has plainly failed to carry her burden to show that the probate court erred in sustaining Brandon's demurrer as to her claims for a share of rental income and tax refunds. (See *Sui, supra*, 196 Cal.App.4th at p. 938.)

Accordingly, we conclude that the probate court properly sustained Brandon's demurrer on the ground that June's petition was untimely insofar as it sought amounts for rental income and tax refunds.[23]

---

[22] In August 2019, the family court ordered that June be paid "$34,177.68 for one-half of the income tax refunds for years 2004 and 2005, as identified in the Dissolution Judgment entered June 7, 2011." June contends that the family court misinterpreted the 2011 Dissolution Judgment, and that that she was entitled to an additional $34,177.68 because she was entitled to the full $68,355.36 specified in the 2011 Dissolution Judgment (i.e., $1750, $42,545.00, and $24,060.35), rather than one half of the amounts specified in that judgment. For the reasons discussed in the text, June was obligated to bring such a claim as a creditor's claim under section 9300, subdivision (a) because it amounts to an effort to enforce a money judgment.

[23] In light of our conclusion that the probate court properly determined that June's claim was an untimely creditor's claim for the reasons stated in

22

B. *June fails to establish that she could state a claim to enforce her share of the rental income and the retirement account against the estate's assets pursuant to Family Code section 2337*

June appears to contend that she could amend her petition to state a claim to enforce her alleged share of rental income and the retirement account against the estate's assets pursuant to Family Code section 2337.[24]

1. *Governing law*

   a. *The law governing review of an order sustaining a demurrer without leave to amend*

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton*, *supra*, 195 Cal.App.4th at p. 1609.) " 'To meet this burden, a plaintiff must submit a

_____

the text, we need not consider Brandon's contention that "in the [family court] proceeding, [June] admitted that the 2011 [Dissolution] Judgment was in fact a money judgment and was subject to the Probate Code's statutory scheme regarding creditor's claims."

[24]  June raises this claim in sections of her brief titled, "June's request for enforcement of her 50% interest in the rents in the real property is properly enforced against the estate assets pursuant to Family Code section 2337," and "June's request for enforcement of her 50% 401k payment is properly enforced against the other marshalled estate assets pursuant to Family Code section 2337." (Capitalization and boldface omitted.)

Because June is appealing from an order sustaining a demurrer without leave to amend, and June's petition in the probate court did not refer to Family Code section 2337, we assume that June intends to claim that she could file an amended petition on remand that alleges a claim premised on Family Code section 2337.

23

proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action.'" (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 166; see, e.g., *People ex rel. Brown v. Powerex Corp.* (2007) 153 Cal.App.4th 93, 112 [appellant has a "duty to spell out in his brief the specific proposed amendments on appeal"].)

   ii. *Substantive law*

Family Code section 2337, subdivision (a) provides:

> "(a) In a proceeding for dissolution of marriage, the court, upon noticed motion, may sever and grant an early and separate trial on the issue of the dissolution of the status of the marriage apart from other issues."

Family Code section 2337, subdivision (c) provides that "[t]he court *may* impose upon a party any of the following conditions on granting a severance of the issue of the dissolution of the status of the marriage, and in case of that party's death, an order of any of the following conditions continues to be binding upon that party's estate." (Italics added.) The statute contains a list of conditions that the court may impose in granting a severance motion of the status of the marriage including the following:

> "(8) In order to preserve the ability of the party to defer the distribution of the Individual Retirement Account or annuity (IRA) established under Section 408 or 408A of the Internal Revenue Code of 1986, as amended, (IRC) upon the death of the other party, the court may require that one-half, or all upon a showing of good cause, of the community interest in any IRA, by or for the benefit of the party, be assigned and transferred to the other party pursuant to Section 408(d)(6) of the Internal Revenue Code.

24

This paragraph does not limit the power granted pursuant to subdivision (g)." (Fam. Code, § 2337, subd. (c)(8).)[25]

Family Code section 2337, subdivision (g) provides:

"(g) If the party dies after the entry of judgment granting a dissolution of marriage, *any obligation imposed by this section* shall be enforceable against any asset, including the proceeds thereof, against which these obligations would have been enforceable prior to the person's death." (Italics added.)

One treatise summarizes the impact of section 2337 subdivision (c) and (g) conditions as follows:

"A judgment of dissolution effectively terminates a vast body of rights and benefits attaching to marital or domestic partnership status. Therefore, courts may impose various *conditions* on a party upon the granting of a 'status only' bifurcation motion and entry of a 'status only' dissolution judgment to protect the other party against losses that would result from such adverse consequences. [Citation.]

"In the event of the party's death, whatever [Family Code section] 2337 conditions are imposed by the court also will bind his or her estate; and 'shall be enforceable' against any assets (or proceeds thereof) as to which the [Family Code section] 2337 obligations would have been enforceable before that party's death." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2021) ¶ 11:483, p. 11-157.)

2. *Application*

In her brief on appeal, June contends that the "the mandatory language of [Family Code section] 2337[, subdivision (g)] requires the probate court to allocate [June's] family law judgment claims for rent reimbursement . . .

---

[25] Although June's brief states that this text is in Family Code section 2337, subdivision (b)(8), it is actually contained in subdivision (c) of the statute.

against the real estate asset proceeds in the estate." Similarly, June contends that "Family Code Section 2337[, subdivision] (g) mandates that the 401k judgment . . . shall be enforced against the sales proceeds in the estate."[26] With respect to the latter claim, she contends that the portion of the 2011 Dissolution Judgment pertaining to the retirement account[27] is "in essence is an order consistent with the terms of [Family Code, section 2337, subdivision (c)(8)]."

These claims fail because June has not demonstrated that she could allege that William brought a motion to sever under Family Code section 2337, subdivision (a) in the dissolution action, nor does she demonstrate that she could allege that the family court imposed *any* Family Code section 2337 obligations as a condition precedent to the granting of the 2011 Dissolution

_____

[26]    June's references to "real estate asset proceeds in the estate," and "sales proceeds in the estate," appears to refer to the proceeds of the sale of the Sunrise Canyon Property.

[27]    June quotes the following portion of the 2011 Dissolution Judgment:

> "50/50 division of [William's] 401k account with Fidelity.  In the event this account has been liquidated as represented by [June], [William] is ordered to provide all documentation detailing the tracing of the 401k funds (rollover value of approximately 365,586.06) to LPL account # . . .  and any subsequent reinvestment of these funds thereafter. [William] is ordered to immediately provide these tracing documents and upon written request of the petitioner he is to transfer her 50% interest and title in all remaining funds, shares, negotiable instruments that were invested or reinvest form the original source 401k account.  The court reserves jurisdiction to consider possible [an automatic temporary restraining order] violation for this particular account."

Judgment.[28]  Further, the 2011 Dissolution Judgment does not reference Family Code Section 2337 and does not purport to order any obligations under Family Code Section 2337.

Accordingly, we conclude that June has not demonstrated that she could allege that the probate court violated Family Code section 2337 in failing to enforce her alleged share of rental income and the retirement account in the 2011 Dissolution Judgment from the estate's assets.

C.  *June's claim as to the merits of her tax refund claim is irrelevant because she has not demonstrated that her tax refund claim was timely brought*

The final claim in June's brief is titled, "June's request for enforcement of tax refund allocation correction against the estate is not *time barred*." (Italics added.)  However, the legal argument following this heading pertains entirely to the *merits* of June's tax refund claim.  Because we conclude that the probate court did not err in determining that June's tax refund claim was untimely, we need not address the merits of that claim.

---

[28]  In addition, as to June's claim for rental income, as discussed in part III.A, *ante*, June does not identify any provision of the 2011 Dissolution Judgment awarding her a judgment for such income.  June also does not identify any Family Code section 2337 condition allegedly applicable to her claim pertaining to rental income.  As to her claim for the retirement account, June fails to demonstrate that the 2011 Dissolution Judgment's award of a share of the retirement account to her was, as she states in her brief, "in essence" an order entered pursuant to Family Code, section 2337, subdivision (c)(8).)

IV.

DISPOSITION

The order sustaining Brandon's demurrer without leave to amend is affirmed.  June is to bear costs on appeal.


                                                                                      AARON, J.

WE CONCUR:



McCONNELL, P. J.



IRION, J.